IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**GLORIA BYARS**<br>**CARLTON REMBERT** | **CRIMINAL NO. 21-247** |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Tiwana Wright and Samuel Dalke, Assistant United States Attorneys, submits this memorandum in advance of the jury trial scheduled for November 6, 2023.

**I.     SUMMARY OF EVIDENCE**

On November 3, 2022, a grand jury sitting in the Eastern District of Pennsylvania returned a 10-count superseding indictment against defendants Gloria Byars and Carlton Rembert, charging them with conspiracy to commit bank fraud, bank fraud, and 5 counts of wire fraud in violation of 18 U.S.C. §§ 1349, 1343, and 1344. Defendant Gloria Byars is also charged with money laundering, filing a false income tax return, and failure to file a tax return in violation of 18 U.S.C. § 1956 and 26 U.S.C. §§ 7206(1) and 7203.

The superseding indictment alleges that defendant Gloria Byars served as a court-appointed guardian for elderly and incapacitated wards in the Philadelphia region, and that she used her position to steal over $1.2 million from her wards and their financial institutions. The indictment further alleges that Byars' brother, defendant Carlton Rembert, assisted his sister with

the theft by opening sham business bank accounts, cashing unauthorized checks from the wards' accounts, and then returning funds to defendant Byars.

      A.      **Bank and Wire Fraud Scheme**

From 2008 until October 2016, defendant Gloria Byars worked for Person A at Company A in Havertown, Pennsylvania. Person A owned and operated Company A, which provided guardian services to incapacitated persons in Delaware, Chester, Philadelphia, Bucks, and Lancaster Counties. Court-appointed guardians controlled the wards' assets and assisted with their living needs. As office manager for Company A, Byars assisted Person A in the management of the wards' finances and living needs. Person A was the appointed guardian over some of the elderly wards involved in Byars' scheme, however Byars had access to and control of the money in the wards' accounts of Person A. Byars controlled all the checkbooks for the wards and had a signature stamp with Person A's name that she would use to sign the wards' checks. While working for Company A, Byars funneled money from the wards' bank accounts into a shell company she set up called ICU Records and Billing (ICURB).

In addition to working for Company A, from October 2016 until the summer of 2018, Byars ran her own guardianship business called Global Guardians Services (GGS) where she was appointed by courts to serve as the legal guardian of numerous elderly wards. Byars used GGS to funnel money from her wards' accounts into her GGS bank accounts.

Byars also funneled money from wards' bank accounts to fictitious medical businesses, ACC Medical, CWR Medical, and Grace Home for Children, which then cycled the bulk of the money back to Byars. ACC Medical was a shell company controlled by co-defendant Alesha Mitchell, who has pled guilty. Byars and Mitchell were friends. Byars' brother, Carlton Rembert, opened bank accounts for a fictious company he named CWR Medical Services. He also opened

bank accounts for a business named Grace Home for Children, Inc. Byars wrote checks to these shell companies from ward bank accounts, mailed them to Mitchell and Rembert who deposited the checks into their sham medical business bank accounts in Virginia. Mitchell and Rembert often withdrew large amounts of cash from these bank accounts in amounts just under $10,000 and obtained cashier's checks made payable to Byars' companies. The cash and/or checks were then mailed back to Byars in Pennsylvania.

From May 2015 to February 2018, Byars sent Carlton Rembert checks totaling $695,000 from wards' bank accounts. From July 2014 to February 2016, Byars mailed Mitchell checks from wards totaling approximately $140,000.

In total, between January 1, 2012, through April 3, 2018, Byars, Rembert, and Mitchell embezzled over $1.2 million from incapacitated persons in EDPA.

    **B.**    **Tax Offenses Against Gloria Byars**

Byars failed to report any of the income she received from the scheme and also failed to report any of the legitimate money she earned in 2016-17 while operating her own company, GGS. Byars self-prepared her tax returns and filed returns in 2015, 2016, and 2018. In 2015 and 2016, Byars only reported the W-2 income she received while working for Company A, and she did not include the money diverted from wards into her GGS account.

In 2017, Byars acknowledged earning income from GGS, but she failed to file a tax return and failed to report the money diverted from wards into her GGS account.

**II.**    **ELEMENTS OF THE OFFENSES**

    **A.**    <u>**Count One – Conspiracy to Commit Bank Fraud – 18 U.S.C. § 1349**</u>

To prove a violation of 18 U.S.C. § 1349, the government must prove the following elements beyond a reasonable doubt:

>*First*, that two or more persons agreed to commit bank fraud;
>
>*Second*, that the defendants were parties to or members of that agreement; and
>
>*Third*, that the defendants joined the agreement or conspiracy knowing of its objective to commit bank fraud and intending to join together with at least one other alleged conspirator to achieve the objective.

*See* Third Circuit Model Criminal Jury Instruction, No. 6.18.371A (Feb. 2021). Section 1349 does not require proof of an overt act. *See United States v. Obaygbona*, 556 F.App'x. 161, 2014 WL 764764 (3d Cir. 2014).

### B.     Count Two - Bank Fraud - 18 U.S.C. § 1344

To prove a violation of 18 U.S.C. § 1344(2), the government must prove the following elements beyond a reasonable doubt:

>*First,* that the defendants knowingly executed a scheme to obtain the money, funds, or other property owned by or under the control of a financial institution by means of material false or fraudulent pretenses, representations or promises; and
>
>*Second,* that the financial institution was then insured by the Federal Deposit Insurance Corporation (FDIC).
>
>It is not necessary that the government prove that the defendants knew or intended that the money, funds, or property was owned by or under the control of the financial institution.

*See* Third Circuit Model Criminal Jury Instruction, No. 6.18.1344 (Feb. 2022) (noting that a third element, relating to intent to defraud a financial institution, is omitted for charges of Section 1344(2)); *Loughrin v. United States*, 573 U.S. 351, 3535, 134 S. Ct. 2384, 2389 (2014).

### C.     Counts Three through Seven – Wire Fraud - 18 U.S.C. § 1343

To establish a violation of 18 U.S.C. § 1343, the government must prove the following elements beyond a reasonable doubt:

>*First,* that the defendants knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, or willfully participated in such a scheme with knowledge of its fraudulent nature;

4

*Second,* that the defendants acted with the intent to defraud, and

*Third,* that in advancing, furthering, or carrying out the scheme, the defendants transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

*See* Third Circuit Model Criminal Jury Instruction, No. 6.18.1343 (Feb. 2022). A defendant need not personally have wired a communication; it is enough that they "caused" a transmission of a wire communication in the sense that the transmission was the reasonably foreseeable consequence of the intended scheme. *See Pereira v. United States*, 347 U.S. 1, 8 (1954); *United States v. Keller*, 395 F. App'x 912, 914-15 (3d Cir. 2010) (finding the use of wire communications in clearing the transfer of checks a defendant deposited was reasonably foreseeable).

### D. Count Eight – Money Laundering - 18 U.S.C. § 1956

To establish a violation of 18 U.S.C. § 1956(a)(1), the government must prove the following elements beyond a reasonable doubt:

*First,* that the defendant conducted a financial transaction, which affected interstate commerce;

*Second,* that the defendant conducted the financial transaction with the proceeds of a specified unlawful activity, that is, bank fraud;

*Third,* the defendant knew the transaction involved the proceeds of some form of unlawful activity; and

*Fourth,* the defendant conducted the financial transaction with knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of bank fraud.

*See* Third Circuit Model Criminal Jury Instruction, No. 6.18.1956A (Oct. 2017).

### E. Count Nine – Filing a False Income Tax Return - 26 U.S.C. § 7206(1)

To establish a violation of 26 U.S.C. § 7206(1), the government must prove the following elements beyond a reasonable doubt:

*First*: That the defendant made and subscribed and filed an income tax return;

*Second*: That the tax return is verified by a written declaration that it was made under the penalties of perjury;

*Third*: That the return was false regarding a material matter;

*Fourth*: That the defendant did not believe the return was true and correct as to that material matter; and

*Fifth*: That the defendant acted willfully.

*See* Third Circuit Model Criminal Jury Instruction 6.26.7206 (Feb. 2021). The government may rely solely on circumstantial evidence to prove willfulness for tax offenses. *See, e.g., United States v. Tucker*, 133 F.3d 1208, 1218-19 (9th Cir. 1998) (false returns); *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) (evasion); *United States v. Grumka*, 728 F.2d 794, 797 (6th Cir. 1984) (violation of § 7203).

### F. Count Ten – Willful Failure to File Return - 26 U.S.C. § 7203

To establish a violation of 26 U.S.C. § 7203, the government must prove the following elements beyond a reasonable doubt:

*First,* that the defendant was required to file an income tax return;

*Second,* that the defendant did not file a tax return at or before the time required by law or regulation; and

*Third,* that the defendant's failure to file was willful.

*See* Third Circuit Model Criminal Jury Instruction 6.26.7203 (Feb. 2021).

## III. EVIDENTIARY MATTERS

### A. Pending Pre-Trial Motions

The following pre-trial motions remain pending without a ruling from the Court:

1. Government's motion to admit business records pursuant to F.R.E. 803(6) and 902(11) (Dkt. No. 89)
   Neither defendant filed a response or opposition.

2. Government's motion to admit audio recordings (Dkt. No. 90)
   Defendant's opposition (Dkt. No. 116)

3. Government's motion to admit evidence as intrinsic or under F.R.E. 404(b) (Dkt. No. 91)
   Defendants' opposition (Dkt. Nos. 101 and 117)

At the pre-trial hearing on July 24, 2023, the Court provided the parties some guidance on the audio recordings motion (Dkt. No. 90) and stated it would defer ruling on the intrinsic/404(b) motion (Dkt. No. 91). The Court also provided defense additional time for the defendants to respond to the business records motion (Dkt. No. 89), but no response was filed.

### B. Summary Charts

This case will involve the presentation of a substantial number of documents, including financial transaction records and account information from multiple banks and businesses. At trial, the United States plans to use summary charts, supported by witness testimony, to assist the jury in synthesizing, comparing, and understanding the large volume of documents pertaining to the events depicted in the documents. Most critically, the government contemplates charts detailing the defendants' financial transactions.

Under F.R.E. 1006, summary charts are admissible if they are based upon evidence that is: (1) voluminous; (2) admissible; and (3) available to the opponent. *See United States v. Strissel*, 920 F.2d 1162, 1163-64 (4th Cir. 1990). Although in this case all of the evidence underlying the government's summary charts will, in fact be offered for admission, it is not

necessary that all of the evidence depicted in the charts be admitted as long as it is admissible. *See id.*

In addition to seeking admission under F.R.E. 1006, the government is permitted to use and show these charts to the jury as educational devices. *See Pierce v. Ramsey Winch Co*, 753 F.2d 416, 431 (5th Cir. 1985) (noting "it is critical to distinguish between charts or summaries as evidence and charts or summaries as pedagogical devices"). Under the rules, and even apart from Rule 1006, a trial court "has the discretion to permit the parties to show to the jury charts and other visual aids that summarize or organize testimony or documents that have already been admitted in evidence." *Id.* In addition to the "voluminousness" of the underlying evidence, the testimony concerning these exhibits is more easily presented and understood through summary charts.

    C. Introduction of Witness's Plea Agreement

One of the government's witnesses will be testifying pursuant to a written guilty plea agreement. In direct examination of that witness, the government intends to introduce the written plea agreement and discuss the witness's responsibilities under the terms of the agreement, including the witness's obligation to tell the truth. Such testimony may properly be introduced by the government. Pleas and plea agreements of testifying coconspirators are admissible in the government's case in chief, even when the defendants offer to refrain from any affirmative challenge to the witness's credibility, in order to allow the jury to accurately assess the witness's credibility, to eliminate any concern that the jury may harbor that defendant has been selectively prosecuted by the government and to explain how the witness has first-hand knowledge concerning about the events about which they are testifying. *See United States v. Universal Rehabilitative Services*, 205 F.3d 657, 665-667 (3d Cir. 2000); *United States v. Ramos*, 27 F.3d

65, 67 n.4 (3d Cir. 1994); *United States v. Oxman*, 740 F.2d 1298, 1302-03 (3d Cir. 1984).

The Court should give an appropriate limiting instruction to ensure that the jury does not use the evidence of the plea agreement for an improper purpose. A proposed instruction on co-defendants who have entered plea agreements has been submitted by the government as part of its Proposed Jury Instructions.

D. <u>Use of Agents' Reports of Interview to Cross-Examine Witnesses</u>

The government in this case has provided to the defense an abundance of reports of witness interviews by government agents. To the extent that the agents who prepared the reports testify, those reports, if materially inconsistent, provide an appropriate basis for impeachment of the agents. However, under the Federal Rules of Evidence, those reports may not be used to impeach the subject of the underlying interview unless the subject has somehow adopted those reports or notes. *See United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992).

As a matter of evidence, the burden "of proving that notes reflect the witness' own words rather than the note taker's characterization falls on the party seeking to introduce the notes." *Id.* Thus, a party seeking to use a report to impeach bears the burden of proving a rational basis for concluding that the report either was adopted by the witness or represents the verbatim transcript of the witness' statement. *See id.* at 30. In the absence of such proof, cross-examination from such reports or notes should be carefully scrutinized so that a statement that is otherwise inadmissible is not backdoored into evidence and read into the record. *See United States v. Shoenborn*, 4 F.3d 1424, 1427-28 & n. 3 (7th Cir. 1993).

In *Almonte*, a DEA agent testified at trial about the post-arrest statements that he had obtained from two defendants who were being tried. *Id.* at 28. One defendant sought to impeach the agent by admitting interview notes taken by an Assistant U.S. Attorney who had interviewed

the agent, as a prior inconsistent statement. *Id.* at 28-29. The district court rejected the effort and the Second Circuit affirmed, holding that the AUSA's notes were not the agent's statement, but merely a "third party's characterization" of the agent's statement, and therefore irrelevant as an impeaching prior inconsistent statement and consequently inadmissible:

> We have held, however, that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization. . . . Thus, in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words. The problem, in essence, is one of relevancy. If a third party's notes reflect only that note taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.

*Id.* at 29 (citation omitted).

In this case, the defendants should not be permitted to cross-examine witnesses using any portion of the reports, or to admit notes or reports to impeach the underlying subjects of those interviews.

### E. <u>Use of Statements by Co-Conspirators</u>

As part of its case in chief, the government will introduce at trial certain statements by both co-defendants, as well as statements by co-conspirators. The government will rely upon such statements to help it to establish the defendants' knowledge of, and participation in, the conspiracy to commit bank fraud, as well as the substantive crimes carried out by the conspirators in furtherance of the conspiracy. Pursuant to Federal Rule of Evidence 801(d)(2)(E), such coconspirator statements are admissible and are not hearsay because they are relevant statements of coconspirators made during the course and in furtherance of the conspiracy.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement made by a co-conspirator of a party during the course and in furtherance of that conspiracy" is not hearsay and

10

may be admitted as evidence against a co-conspirator. In order for a court to admit the co-conspirator statements, the government must prove: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; (3) that the statements were made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. *United States v. Bourjaily*, 483 U.S. 171, 175 (1987); *United States v. McGlory*, 968 2d 309, 333-34 (3d Cir. 1992); *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991).

The trial court may admit statements pursuant to the Rule even if the statements relate to a conspiracy not charged in the indictment. *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998); *United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976). The rationale for this rule is that the co-conspirator provision in Rule 801(d)(2)(E) is merely a rule of evidence founded on the theory "that a person who has authorized another to speak or act to some joint end will be held responsible for what is later said or done by his agent ..." *Trowery*, 542 F.2d at 626.

In making a preliminary factual determination as to the existence of a conspiracy and the defendant's participation in it, courts may consider the offered hearsay statement itself. *Bourjaily*, 483 U.S. at 180-81. "[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id*. *See also McGlory*, 968 F.2d at 334.

Moreover, the district court may consider the totality of the circumstances when deciding the admissibility of such evidence. "The circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement is made, or evidence corroborating the contents of the statement," should be considered by the trial court. *See* Fed. R. Evid. 801(d)(2) (Advisory Committee Notes). Furthermore, the existence of the conspiracy and the party's participation in that conspiracy need only be proved by a preponderance of the evidence.

*Bourjaily*, 483 U.S. at 175.

Although casual conversations between co-conspirators are inadmissible, statements that, among other things, maintain cohesiveness and convey information relevant to conspiratorial objectives are in furtherance of the conspiracy and are admissible under Rule 801(d)(2)(E). *United States v. Traitz*, 871 F.2d 368, 399 (3d Cir. 1989). Accordingly, it has been held that in a drug conspiracy case that statements of a co-conspirator identifying a fellow co-conspirator as his source of narcotics are statements made in furtherance of the conspiracy." *United States v. Lambros*, 564 F.2d 26, 30 (8th Cir. 1977). *See United States v. Munson*, 819 F.2d 337, 341 (1st Cir. 1987); *United States v. Anderson*, 642 F.2d 281, 285 (9th Cir. 1981).

The Third Circuit has commented that the "in furtherance" requirement is to be given a broad interpretation. *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984); *United States v. DePeri*, 778 F.2d 963, 981 (3d Cir. 1985). Moreover, although the "during the course of" and "in furtherance" requirements do not overlap entirely, they are closely related. *United States v. Ammar*, 714 F.2d 238, 253 (3d Cir. 1983). While mere narratives of past events or mere idle chatter that has no current purpose do not generally occur in furtherance of the conspiracy, statements that "provide reassurance, serve to maintain trust and cohesiveness among co-conspirators, or inform each other of the current status of the conspiracy furthers the ends of the conspiracy." *Id*. at 252. For example, statements which are relevant to the distribution of the proceeds of the conspiracy are considered in furtherance of the conspiracy. *Id*. at 253.

In determining whether a particular statement was made during and in furtherance of the conspiracy, the trial court should examine the circumstances under which the statement was made. *See United States v. Traitz*, 871 F.2d 368, 399 (3d. Cir. 1989). Statements in which co-conspirators were kept abreast of the status of the conspiracy have been found to be in

furtherance of the conspiracy. *See, e.g. United States v. Harris*, 908 F.2d 728, 737 (11th Cir. 1990); *United States v. Hudson*, 970 F.2d 948, 958-59 (1st Cir. 1992). Moreover, in order for statements to be deemed "in furtherance of the conspiracy," they need not "further" the conspiracy; rather it is sufficient that a statement was intended to promote the conspiracy even if it did not actually do so. *See United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993); *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir. 1990). A statement in furtherance of the conspiracy need not necessarily have been intended to further the interests of any defendant; it need only have been in furtherance of the conspiracy. *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

The party against whom a co-conspirator statement is admitted need not have been a party to the conversation. Indeed, the recipient of the statement need not even have been a member of the conspiracy. While Rule 801(d)(2)(E) "requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is made also be a member." *Gupta*, 747 F.3d at 125 (citations and quotations omitted). In *Gupta*, the Second Circuit affirmed the admission against the defendant of recorded telephone conversations carried on between a co-conspirator (who had been tried separately) and a third-party whom the government conceded was not a member of the conspiracy. *Id*. Finding that the co-conspirator's conversations with the third-party facilitated one of the goals of the conspiracy, the Court affirmed their admission against the defendant. *Id*. at 125-26; *see also Duran*, 407 F.3d at 838 (recorded conversations between co-conspirator and co-conspirator's customer were admissible against the defendant).

Even where the speaker is a third-party who is not a member of the conspiracy, that person's recorded statements may be admitted as part of a conversation where they are not

admitted for the truth of the matter asserted. *United States v. Mahasin*, 362 F.3d 1071, 1085 (8th Cir. 2004). In *Mahasin* the defendant was charged with conspiring to have a witness against him in an underlying drug and gun case killed. Part of the evidence used to convict him of the assignation plot were recordings of telephone calls that he made from prison. Despite the fact that some of the speakers in the recordings were never identified, those recordings were still admissible. To the extent that the unattributed conversations were admitted for their truth, their contents established that the speakers had been members of the conspiracy. *Id*. The remaining conversations were not admitted for the truth, but for the non-hearsay purpose of allowing the jury to understand the inculpatory statements of the members of the conspiracy. *Id*. at 1084-85; *see also Duran*, 407 F.3d at 839, n.5 (recorded statements of third-party were admissible to give context to co-conspirator's statements).

Further, under Rule 104, a trial court may admit coconspirator statements before determining their admissibility, subject to a later connection." *United States v. Gambino*, 926 F.2d 1355, 1360-1361 (3d Cir. 1991). *See also United States v. Ammar*, 714 F.2d 238, 246-247 (3d Cir. 1983); *United States v. Continental Group*, 603 F.2d 444, 456-57 (3d Cir. 1979). Such an approach avoids undue complexity and confusion for the jury. *Continental Group*, 603 F.2d at 456.

    F.  <u>Use of the Defendants' Own Statements</u>

The government in this case will present admissions of a party opponent under F.R.E. 801(d)(2). These statements include telephone conversations, oral statements, and prior testimony of the defendant. Such evidence is, by definition, not hearsay as to the defendant. F.R.E. 801(d). Thus, for example, excerpts from the defendant Gloria Byars' telephone conversations are admissible against her because they constitute a defendant's admissions under

Rule 801(d)(2)(A).  Likewise, defendant Carlton Rembert's statements to a law enforcement officer may be admitted against him.  *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).  So too a defendant's prior testimony.  *United States v. Lay*, 612 F.3d 440, 444, 448 (6th Cir. 2010) (deposition from civil case was admissible at criminal trial as admission of party opponent); *United States v. Moffie*, 239 F. App'x 150, 156-57 (6th Cir. 2007) (not precedential) (same).

Such statements, however, may not be admitted by the party who gave them, because Rule 801(d)(2) does not allow a party to "to introduce his or her own statements through the testimony of other witnesses." *Id.* (italics in original).  Instead, to constitute an admissible prior statement, the Federal Rules require that a statement be "offered against an opposing party." Rule 801(d)(2).  As the First Circuit has explained, this requirement means that the statement "must be contrary to a party's position at trial." *United States v. Rivera–Hernández*, 497 F.3d 71, 82, n.5 (1st Cir. 2007).  Thus, a statement made by a defendant is  inadmissible when a defendant seeks to introduce it to advance his position at trial.  Indeed, if such statements were admissible, "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *Moffie*, 239 F. App'x at 156-57.

In this case, a significant number of statements of the defendants will be introduced by the government.  This does not mean that the defendant will be able to do likewise.  It does not matter whether the information the party seeks to admit was inculpatory or exculpatory at the time of its making.  In either case, a party simply cannot admit his or her own statements as admissions of a party opponent.  *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) (court of appeals upheld district court's ruling that tape recording of a conversation between a

codefendant and a government informant that defendant considered exculpatory on the issue of his knowledge of illegality was inadmissible because it was not offered "against a party" as required by Rule 801(d)(2)). *McDaniel*, 398 F.3d at 545 n.2. That rule should be followed here.[1]

### G. Reference to Punishment for Charged Offenses

The punishment the defendants face for the offenses charged is not a proper matter for the jury's consideration. *See Shannon v. United States*, 512 U.S. 573 (1994); *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993); *United States v. Austin*, 5h33 F.2d 879, 885-86 & n.14 (3d Cir. 1976); *see generally* 1 L. Sand, J. Siffert, W. Loughlin, Modern Federal Jury Instructions -- Criminal & 9.01 (1993). As the court observed in *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980), "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial." Questioning and argument addressing these issues, thus, would be improper. Evidence should be excluded where it is irrelevant to the issue being tried or where it will "induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986) (citation omitted). Accordingly, all references by the defendants or witnesses to punishment for the offenses charged should not be permitted.

## IV. PROPOSED STIPULATIONS

On October 20, 2023, the Government proposed the 10 stipulations to help streamline and

---

[1] Rule 801(d)(2) operates differently against the government. Because agents of the government are disinterested in the outcome of the trial, and are unable to bind the sovereign, courts have - at least in criminal cases - excluded government employees' statements from the admissions of the party opponent rule. *United States v. Prevatte*, 16 F.3d 767, 779 n.9 (7th Cir. 1994). Although in *dicta*, the Third Circuit has "recognize[d] that several courts have held that statements by police officers or other law enforcement officials are not admissible on an admissions theory as substantive evidence against the sovereign in a criminal prosecution." *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993).

shorten the trial. The stipulations relate to the insured status of financial institutions (#1-2), the interstate electronic pathway of wire transmissions (#3-7), and authenticity and admissibility of business records (#8-10).

Defendant Byars has not indicated whether she will agree to any or all of the proposed stipulations.  On October 27, 2023, defendant Rembert stated he would not stipulate to anything.

## V. WITNESSES

The government may call the following witnesses in its case-in-chief:

A. <u>Likely Trial Witnesses</u>
   1. James Tyler
   2. Michael Etkin
   3. Robert Stump
   4. Maryanne Logue
   5. Alesha Mitchell
   6. Pamela Gordon
   7. Paul Grant
   8. Lillian Viglianese
   9. Wilma Taylor
   10. Ron Augustyn
   11. Representative from Wells Fargo Bank
   12. Representative from Citizens Bank
   13. Representative from Police and Fire Federal Credit Union
   14. Representative from National Credit Union Administration
   15. Aiyanna Harris
   16. Ken Hamilton
   17. Sam Forte
   18. Keith Collins
   19. IRS Special Agent Richard Martin
   20. Delaware County Detective Edward Rosen
   21. FBI Special Agent Jason Huff
   22. Ed Lowitz, Auditor
   23. Stacy Esimai, Auditor
   24. Representative from the Federal Retirement Thrift Investment Board
   25. Diane Weil
   26. Representative from the Federal Deposit Insurance Corporation

B. <u>Possible Trial Witnesses</u>
   1. Beth Stephanide
   2. Ellen Funk
   3. Bruce Alwine

      4. Lucious Cheeseboro
      5. Karen Levy
      6. David Riley
      7. Heidi Austin
      8. Joseph Wituschek
      9. Representative from TD Bank
      10. Representative from BayPort Credit Union
      11. Representative from Bryn Mawr Trust Company, now WSFS Bank
      12. Representative from Suntrust Bank
      13. Representative from Bank of America
      14. Representative from PNC Bank

## VI. GOVERNMENT EXHIBITS

The government will provide the Court and defense counsel a disk containing the government's exhibits, as well as a binder with hard copies of exhibits that are not too large to print on the day of jury selection. The government intends also to display these exhibits electronically to the jury once admitted.

## VII. LENGTH OF TRIAL

The government estimates that the presentation of its case-in-chief will take 5 to 8 trial days.

                              Respectfully submitted,

                              JACQUELINE C. ROMERO
                              United States Attorney

                              */s/ Tiwana Wright*
                              Tiwana Wright
                              Samuel S. Dalke
                              Assistant United States Attorneys

Date: October 27, 2023

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Trial Memorandum was served by electronic filing ECF notification and email on the following defense counsel:

Vernon Z. Chestnut
chestnutlaw@hotmail.com
msjd2004@gmail.com
Counsel for Defendant Carlton Rembert

Matthew D. Lee
mlee@foxrothschild.com
Counsel for Defendant Gloria Byars

*s/ Samuel S. Dalke*
Samuel S. Dalke
Assistant United States Attorneys

Date: October 27, 2023